UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

KENNETH McNEW,

    Plaintiff,

v.

C.R. BARD, INC., et al.,

    Defendants.

No. 1:19-CV-195-H

## ORDER AND MEMORANDUM OPINION

In this products liability case against defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard"), plaintiff Kenneth McNew moves to transfer proceedings in this case to Judge Scholer in the Dallas Division of the Northern District of Texas. For the reasons that follow, the Court denies McNew's motion.

**1.    Factual Background**

Bard manufactures and markets medical devices, including the inferior vena cava (IVC) filters at the heart of this dispute. In 2015, the Judicial Panel for Multidistrict Litigation consolidated 22 cases where plaintiffs claimed that they had been injured by defective IVC filters manufactured by Bard in the District of Arizona for coordinated pre-trial discovery (the multidistrict litigation or "MDL"). *See* Dkt. No. 3 at 1. Subsequently, additional plaintiffs directly filed thousands of similar IVC cases using a short-form complaint. The short-form complaint included a field where plaintiffs could identify the district and division where venue would have been proper absent the MDL. *See* Dkt. No. 1 at 2. McNew's complaint identified the Northern District of Texas, but it did not identify a division. *See id.* at 2.

Following the resolution of common issues, the District of Arizona transferred each ongoing, directly filed case to the venue identified in the short-form complaint. *See* Dkt. No. 3 at 4. In some of these cases, including this one, the parties agreed that the venue identified in the short-form complaint was proper. *Id.* at 4; *see also* Joint Report, Dkt. No. 21 at 5. The District of Arizona transferred those cases to the agreed-upon district, which is how *McNew* came to the Northern District of Texas. He now moves under 28 U.S.C. § 1404(a)[1] to transfer this case to the Dallas Division of the Northern District of Texas.

**2.  Legal Authority**

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The burden falls on the moving party to show "good cause" that a transfer is "for the convenience of the parties and witnesses, in the interest of justice." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citing *Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). The convenience of counsel is irrelevant to this analysis. *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003); *see also In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (concluding that the district court committed reversible error in considering the convenience of counsel in its transfer decision).

---

[1] McNew originally moved for transfer pursuant to Federal Rule of Civil Procedure 42. However, Rule 42 concerns the consolidation of cases, which McNew does not seek. Section 1404(a), which McNew addressed in his reply brief, governs transfer of venue and is the correct legal standard to apply here.

When applying Section 1404(a), the Court must first ask whether "the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d at 203. If that question is answered affirmatively, the Court applies a set of private and public factors to determine whether a Section 1404(a) transfer is for the convenience of the parties and in the interest of justice.

"The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of America, Inc.*, 545 F.3d at 315 (citations omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The balance of these factors must show that the proposed venue is "clearly more convenient" than the current venue. *Id.* If it is not, then retaining the case is proper.

3. **Analysis**

The parties do not dispute, and the Court concludes, that McNew could have originally brought this action in the Dallas Division. Accordingly, the transfer determination turns on the balance of private and public factors.

A. **Private Factors**

i. **Ease of Access to Sources of Proof and Witness Convenience**

The arguments surrounding the first and third factors, concerning ease of access to sources of proof and cost of attendance for willing witnesses, are closely related in the

3

briefing from McNew and Bard. Bard argues that these factors weigh in favor of retaining the case in Abilene where McNew and his treating physicians reside. McNew counters that proceeding in Abilene would inconvenience Bard's sales and marketing representatives who are located in Dallas or outside of Texas. He further argues that his treating physicians are expected to testify via videotaped depositions and would, therefore, not be inconvenienced by a trial in Dallas.

The Court concludes that these factors weigh against transfer. McNew's argument regarding Bard witnesses who live in Dallas or outside of Texas is unavailing. Courts do not afford significant weight to general allegations that a particular forum would be more convenient for unspecified witnesses. *See, e.g., Cortis, Inc. v. Cortislim International, Inc.*, 2012 WL 12885719, at *8 (N.D. Tex. Oct. 16, 2012). Instead, parties must specifically identify each witness and provide an overview of their testimony so the court can evaluate whether a particular forum would be more convenient for them as well as their importance to the case. *Id.*

Here, McNew generally alleges that proceeding in the Dallas Division would be more convenient for Bard employees living in Dallas and out-of-state. He does not identify these employees, nor does he elaborate on why their testimony is important to this dispute. While Bard does not specifically identify McNew's treating physicians in Abilene by name, both parties seem to know their identities and acknowledge that their testimony would be important at trial. Based on this showing, the Court concludes that proceeding in Abilene would promote access to sources and proof and would be convenient to the case-specific fact witnesses.

### ii. Availability of Compulsory Process

The second private factor examines the availability of compulsory process to compel testimony from unwilling witnesses. According to Bard, McNew's medical providers are more than 180 miles from the Dallas Division and, therefore, outside the scope of the Dallas Division's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A). However, in considering this factor, courts generally require a party to identify witnesses who would potentially be unwilling to testify. *See PrevMED, Inc. v. MNM-1997, Inc.*, 2015 WL 5771822, at *4 (N.D. Tex. Sept. 30, 2015); *AllChem Performance Products, Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013); *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, 2009 WL 3805798, at *10 (N.D. Tex. Nov. 12, 2009). The Court concludes that this factor is neutral because Bard has not provided the Court with any reason to suspect that there may be unwilling witnesses in this case.

### iii. All Other Practical Problems

The fourth private interest factor considers all other practical problems that make trial of a case easy, expeditious, and inexpensive. McNew largely centers his motion on this factor—arguing that proceeding in the Dallas Division would promote judicial efficiency. He points out that Judge Scholer has more than a dozen similar cases pending on her IVC filter "rocket-docket," and McNew contends that she is, therefore, in the best position to manage these cases. McNew also believes that having the cases before one judge would avoid inconsistent decisions and allow the judge to organize the proceedings to accommodate experts, other witnesses, and counsel. While McNew does not intend to consolidate his case with others in Dallas, this factor favors transfer.

### B. Public Factors

#### i. Administrative Difficulties

The first public interest factor concerns how transfer would affect congestion in the transferor and transferee courts. *See Pinnacle Label, Inc.*, 2009 WL 3805798, at *11. Neither party presents evidence on the relative congestion of the Abilene and Dallas Division dockets. Nevertheless, the Court is confident that both venues are ready, willing, and able to manage the litigation. Accordingly, the Court concludes that this factor is neutral.

#### ii. Local Interest

The local interest factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co., L.P. v. BMJ Foods Puerto Rico, Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). However, the location of a party's principal place of business can also create a strong local interest even when the events giving rise to the action took place elsewhere. *See Cypress/Spanish Fort I, L.P. v. Professional Services Industries, Inc.*, 2010 WL 3766882, at *3 (N.D. Tex. Sept. 27, 2010).

Bard contends that Abilene has a strong local interest in the case because it is where the major events giving rise to this action took place. By contrast, McNew argues that other jurisdictions have a stronger local interest in the case. According to McNew, the Bard sales representatives who likely sold the IVC filters to McNew's treating physicians likely live in the Dallas area, while Bard's headquarters are in Arizona and New Jersey.

The Court finds that Abilene has a strong local interest in this case because the principal events giving rise to McNew's cause of action took place in Abilene. McNew was implanted with an IVC in Abilene and continued to live in the Abilene Division where he was treated by Abilene physicians. By comparison, Dallas's connection to this case is weak.

6

Moreover, the location of Bard's headquarters is irrelevant since McNew is not attempting to transfer this case to Arizona or New Jersey. Therefore, the Court concludes that this factor weighs against transfer.

### iii. Familiarity with Governing Law

Neither party argues that the Dallas Division is more familiar than the Abilene Division with the laws governing this case. Therefore, the Court concludes that this factor is neutral.

### iv. Avoidance of Unnecessary Conflict of Laws Issues

Transferring this case from the Abilene Division to the Dallas Division would not create any conflict-of-laws issues. Therefore, the Court concludes that this factor is neutral.

### C. Weighing the factors, the Court denies McNew's motion.

Based on the arguments advanced by the parties, the Court finds that some considerations weigh against transfer, while others weigh in favor of transfer. On the one hand, the access to sources of proof, witness convenience, and local interest factors weigh against transfer. On the other hand, transfer to Judge Scholer in the Dallas Division would likely promote judicial efficiency. Weighing these factors, the Court concludes that McNew has not demonstrated that the Dallas Division is "clearly more convenient" than the Abilene Division. *See In re Volkswagen of America*, 545 F.3d at 315.

In reaching this conclusion, the Court acknowledges that judicial efficiency is highly relevant to transfer decisions. However, several circumstances weaken the force of McNew's judicial-efficiency argument. First, McNew does not intend to consolidate his action with the other IVC filter cases on Judge Scholer's docket. The benefits of transfer to a court with related cases are reduced when the party seeking transfer does not intend to

pursue consolidation. *See* 15 Charles Wright & Arthur Miller, *Federal Practice and Procedure*, § 3864 (4th ed. 2019) ("[Judicial efficiency] need not be given significant weight, or even any weight, however, if there is no realistic possibility of consolidating the pending litigation with the related cases."). Even if this case were transferred to the Dallas Division, the Court would still have to address separate filings and prepare for separate trials. Thus, the potential efficiency gains from transferring the case to Dallas would be marginal.

Second, the risk of inconsistent rulings is mitigated because of the case's procedural posture. The District of Arizona remanded the IVC filter cases because it had resolved many of the common issues and found that "[t]he remaining cases [would] no longer benefit from centralized proceedings." Dkt. No. 3 at 1. At this point, only case-specific discovery is needed, and it is likely that future rulings would hinge on facts that are unique to this case. *See* Dkt. No. 21 at 5. If decisions in the Abilene Division differ from those made in the Dallas Division, it would likely be because the facts call for different outcomes.

While requesting a transfer of this case to Judge Scholer is understandable, McNew has not carried his burden. In light of the countervailing factors in this case—namely, the access to sources of proof in Abilene, witness convenience, and Abilene's local interest in this case—the Court concludes that this case should proceed in the Abilene Division.

**4. Conclusion**

For the above reasons, McNew's motion to transfer venue is denied.

So ordered on February 14, 2020.

James Wesley Hendrix
United States District Judge